[Filed May 3, 1889.]

## GOODYEAR, Respondent, *v.* SCHOOL DISTRICT No. 5, Appellant.

Teacher — Contract for Compensation of — School — Suspension of — For What Reason may be Done. — Where under a contract between the directors of a school district there was a clause to teach a definite period unless the school was discontinued by order of the directors, and the directors, in consequence of the prevalence of diphtheria, stopped the schools, but reopened them when the danger had passed, and before the expiration of such contract: *held*, that the discontinuance of the school was for good cause, and authorized under the contract, but that it did not operate to annul such contract and discharge the teacher, but that it did relieve the district from liability during such period, but not from liability for the unexpired portion of such contract after the schools were reopened.

Appeal from Jackson County.

*A. S. Hammond*, for Respondent.

*H. K. Hanna* and *E. De Peatt*, for Appellant.

Lord, J. — This was an action to recover money on a written contract for services as a teacher. The contract was as follows: —

" It is hereby agreed between the directors of School District No. 5, Jackson County, state of Oregon, and Amanda Goodyear, a qualified teacher of said county and state, that the said Amanda Goodyear is to teach in the public school of said district for the term of nine months, unless discontinued by order of the directors, for the sum of forty-five dollars ($45) per month, commencing on the fifth day of September, A. D. 1887; and for such services lawfully rendered, the directors of said district are to pay the said Amanda Goodyear the amount that may be lawfully due according to this contract, on or before the first day of June, A. D. 1887. Dated this fifth day of September, A. D. 1887.

[Signed]       " F. Roper,
             " J. H. Chitwood,  } Directors.
             " E. S. Applegate,
             " Amanda Goodyear, Teacher."

In December of the same year, diphtheria appeared in the district, and among the children of the school, and in consequence thereof the directors discontinued the schools of the district, and discharged the teachers during such discontinuance on that account. And on or about the ninth day of January, 1888, the disease or epidemic having disappeared, the directors notified the teachers to resume their schools, and the directors and teachers indorsed on the back of the original agreement that the same should be renewed from and after that date. After the schools had gotten fairly started, the diphtheria reappeared, and on the first day of February, 1888, the directors of said district decided to close the schools indefinitely, and reordered that the teachers be discharged, all of which was done at a special meeting called for that purpose. Subsequently, the schools of said district were reopened for the spring term, but the plaintiff was not allowed to resume under her contract, and she has brought an action to recover for her services rendered during the time the school which she taught was discontinued on account of the diphtheria, and also for the unexpired portion of her contract, in which the directors refused to allow her to teach, but hired another in her place; at all other times the plaintiff was paid for her services. By this statement of the facts, it will be seen that, under the contract, the directors claimed the right to discontinue the schools for any proper cause, and to discharge the teachers, or at least that the discontinuance operated to discharge the teachers; while the plaintiff claims that her contract was in full force and effect during the whole period covered by it, and that the directors were not authorized under it, although it may have been timely and expedient to close the schools in consequence of the prevalence of the diphtheria, it did not operate to discharge the teachers or to annul the contract.

In support of the theory of the plaintiff, two cases are cited, viz., *Dewy* v. *Union School District*, 43 Mich. 481, and *Tripp* v. *School District No. 7*, 50 Wis. 653.

But this is a mistake. In the first case, the contract was absolute, without any right being reserved by the directors to discontinue the school for any cause. The small-pox broke out and the school was closed, and the court held that this was not *actus Dei* in the sense as would excuse a school district from liability on its contract, and say: "It must appear from observance of the contract by the district was caused to be impossible by the act of God. It is enough that great difficulties were encountered, or that there existed urgent and satisfactory reasons for stopping the school."

It is apparent from what follows, that if the contract in that case was provided for a discontinuance as in the case at bar, the appearance of an epidemic, such as the small-pox or diphtheria, would have constituted a lawful reason, within the purview of the contract, to have authorized the directors to have discontinued the schools for the time to stay the spread of such diseases, and the suspension of the contract during such discontinuance; or in other words, in such case it would have precluded a recovery for the time the schools were stopped on that account.

The court say: "To let in the defense that the suspense precluded recovery, the agreement must have provided for it. But the district did not stipulate for the right to discontinue the plaintiff's pay on the judgment of its officers, however discreet and fair, that a stoppage of the schools is found a needful measure to prevent their invasion by disease, or to stay or oppose its spread or progress in the community; and the contract cannot be regarded as tacitly subject to such a condition."

In the case at bar, there is an express provision for a

discontinuance, to which the parties have agreed, in the event; as we understand it, that it should become necessary, for any proper cause, to stop or discontinue the schools during some period of the contract. That the presence of diphtheria or other contagious and dangerous diseases would be such a cause, or urgent necessity, as would justify the directors, within the sense of the contract, to discontinue the schools until the dangers arising therefrom should pass, in our judgment, is too manifest to be disputed; and, as a consequence, during such discontinuance, there would be no liability to pay or duty to perform the services of a teacher. By the terms of the contract, there is a suspension of it during that period; nor was the plaintiff discharged in consequence thereof, as claimed by the defendant.

In the other case, — *Tripp* v. *School District, supra,* — there was a clause in the contract by which the directors declared that "we reserve the right to close the school at any time if not satisfactory to us," and under this contract they acted upon the assumption that they could close the school, and lawfully discharge the teacher before her term of hiring had expired, if they were dissatisfied with her management of the school, although the teacher was competent, and at the time of the discharge was in the due performance of her contract. The court held the power of discharge exercised under this clause to be unauthorized by law, and said: "If the power claimed for the board in this case exists, and may be enforced, then the public schools must be taught to suit the whims, caprices, and peculiar notions of the hiring board, and not as the teacher, in the conscientious discharge of his duty, should teach the same." And again: "It may, perhaps, be fairly inferred that, under the visitorial powers conferred on the board by section 441, they would have the power to close the school and discharge the teacher if

he was not, in fact, competent to teach or govern the school, and if for any other cause such teacher was not duly performing the contract on his part, without calling any meeting of the district to take action upon the subject. Such power, however, is very different from that claimed for the board in the case at bar."

Here the board claimed and exercised the power to discharge a teacher, no matter how competent or with what efficiency and usefulness he may have been in the performance of his duties under the contract, if the management was not satisfactory to them, thus usurping powers not conferred, and compelling all teachers of the district to teach to their satisfaction, and not to the satisfaction of the people and the improvement and benefit of the pupils.

In the case at bar, the directors claimed the effect of discontinuing the school during the prevalence of diphtheria operated to discharge the teacher, but not that they had any reserved right under the clause to discharge a teacher who was competent, and in all respects in the faithful and efficient performance of her duties. Their idea was that the suspension of the contract while the school was closed operated to annul or destroy its provisions, and likewise to discharge the teacher and excuse the district from any further liability, and, as a consequence, that the original contract could have no force or effect thereafter unless revived by new promises and engagements. So that there is no parallel between the facts and law as applied in the case cited, and the fact of the case at bar and the law to be applied to it.

What result the court would have reached, if under that clause they had closed the school on account of the presence of some contagious and dangerous epidemic, and the teacher had claimed payment during the whole period covered by the contract, we can only conjecture. There

is a marked difference in the power exercised under a clause of this character, in an agreement in closing the schools on account of some urgent necessity, and in using the same to dismiss a teacher who is competent and efficient in the discharge of his duties, in consequence of personal dissatisfaction of the directors at the management of the schools.

Under the contract at bar, our own opinion is, that the discontinuances were for good cause, and authorized by the contract, and during such times as there was a suspension of the contract for such causes, it did not operate to annul the contract, or discharge the teacher, but it did excuse or relieve the district from liability during such periods, and that when the danger had passed and the schools were reopened, the teacher — the plaintiff — had a right, under the contract, to resume her duties as teacher for the unexpired portion thereof; and if she held herself in readiness and offered to perform her contract, and the directors refused to allow her to do so, she is entitled to recover according to its terms for that period. The judgment must therefore be modified so as to confine the recovery to the unexpired portion of the contract when the schools were reopened, and it is so ordered that it be entered accordingly, and that neither party recover costs in this court.